(Not for Publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| WENDY AMATO, | : | |
| Plaintiff, | : | Civil No. 04-3489 (RBK) |
| v. | : | **OPINION** |
| VERINT SYSTEMS, INC., | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

Presently before the Court is a motion for summary judgment by defendant Verint Systems, Inc. ("Verint") on the discrimination claims raised by plaintiff Wendy Amato ("Amato") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq. ("Title VII"), and the New Jersey Law Against Discrimination ("LAD").  Additionally before the Court is Amato's cross-motion for partial summary judgment on the issue of whether she has set forth a prima facie showing of discrimination.  For the reasons set forth below, this Court will grant Verint's motion and deny Amato's motion as moot.

**I.     BACKGROUND**

Verint is engaged in the business of, among other things, selling technology used to

1

record telephone conversations.  Verint (then known as "Comverse Onfosys, Inc.") hired Amato as an account executive in March of 2000.  In this role, Amato was responsible for developing a client base and generating sales.  On February 3, 2003, Amato was informed that her employment as an account executive was to be terminated.  Amato filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 31, 2003 against Verint and James McNeil ("McNeil"), Verint's Eastern Regional Sales Director and Amato's supervisor.  Amato obtained the right to sue on February 17, 2004, and filed this suit in New Jersey state court on May 17, 2004.  Verint removed the suit to this Court on July 20, 2004.

In the Complaint, Amato claims that Verint discriminated against her in violation of Title VII and the LAD.  Specifically, Amato claims that her termination constituted "sex discrimination, harassment and pregnancy discrimination[.]" (Compl. ¶¶ 21, 24.)  In its motion presently before this Court, Verint argues that, as a matter of law, it did not discriminate against Amato in violation of the two aforementioned statutory schemes.  Amato disputes this argument, and further claims that she has set forth a prima facie case of discrimination, requesting summary judgment on this issue.

## II.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court

weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. See also Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993) ("[S]ummary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law."). However, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III.   DISCUSSION

   A.   Verint's Motion for Summary Judgment

Courts use an identical process for analyzing gender discrimination claims brought pursuant to both Title VII and the LAD. See Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 97, 570 A.2d 903, 907 (1990) ("In outlining approaches and infusing discrimination claims under the LAD with substantive content, we have adopted the Supreme Court's analysis of unlawful discrimination claims brought under Title VII of the Civil Rights Act of 1964[.]"); see also Waldron v. SL Indus., 56 F.3d 491, 503 (3d Cir. 1995) (stating that the LAD is "governed by the same standards and burden of proof structures applicable under Title VII of the Civil Rights Act

of 1964") (quotation omitted).  For such claims, the Court relies on the burden-shifting framework promulgated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  This framework consists of three stages:

> First, the plaintiff must establish a prima facie case of discrimination.  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.  Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999) (quotation omitted). This tripartite framework shifts the burden of production from the plaintiff to the defendant and then back again to the plaintiff.  However, "[w]hile the burden of production may shift, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  Id. (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)).  For purposes of Verint's motion for summary judgment, the facts used under this framework are taken in the light most favorable to Amato.

      1.    Amato's Prima Facie Case

In order to set forth a prima facie case of discrimination, a plaintiff must meet a four-factor test.  In this case, Amato must show that: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) action occurred under circumstances giving rise to an inference of discrimination."  Christopher v. New Jersey, No. 03-2589, 2005 U.S. Dist. LEXIS 16414, at *12 (D.N.J. Aug. 3, 2005) (citing Jones, 198 F.3d at 410-11).  Amato claims that she experienced gender discrimination, which is prohibited under Title VII.  See 42 U.S.C. §2000e-2(a); Rhett v. Carnegie Ctr. Assocs., 129 F.3d 290, 294 (3d Cir. 1997) ("Title VII prohibits employment discrimination based on an individual

employee's sex."). Moreover, "[t]he Pregnancy Discrimination Act ("PDA"), a 1978 amendment to Title VII, states: 'The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy . . . .'" Id. (quoting 42 U.S.C. § 2000e(k)). Amato suffered an adverse employment action, as she was terminated. Verint does not appear to challenge the fact that Amato was qualified.

      Rather, Verint disputes the fact that Amato can meet the fourth prong of this test. Verint suggests that Amato cannot show Verint to have been aware of her pregnancy at the time Amato was terminated, and therefore cannot show that the circumstances surrounding the termination could give rise to an inference of discrimination. Amato claims that Verint was aware of her pregnancy at the time she was terminated, and that even if it was not, her claim of gender discrimination is not based solely on her pregnancy.

      The Third Circuit has stated that "courts have regularly held that the plaintiff cannot make out a prima facie case of discrimination unless he or she proves that the employer knew about the plaintiff's particular personal characteristic." Geraci v. Moody-Tottrup, Int'l, 82 F.3d 578, 581 (3d Cir. 1996). In order to set forth a prima facie case of discrimination based on pregnancy, a court must first inquire whether the pregnancy is apparent, for "when the pregnancy is apparent, or where plaintiff alleges that she has disclosed it to the employer, then a question of the employer's knowledge would likely preclude summary judgment." Id. On the other hand, "[i]f the pregnancy is not apparent and the employee has not disclosed it to her employer, she must allege knowledge and present, as part of her prima facie case, evidence from which a rational jury could infer that the employer knew that she was pregnant." Id.

      In this case, Amato was certainly not in the later stages of her pregnancy, and she does

5

not claim to have told Verint that she was pregnant. Amato claims that she suspected that she was pregnant in November of 2002, and this was confirmed sometime in December of 2002. Amato further claims that she weighed no more than 122 pounds at the time she became pregnant; her doctor's records show that she weighed 125.5 pounds on December 13, 2002, and 131 pounds on January 13, 2003. (Def.'s Br. Wohlgemuth Cert. Ex. K.) By February 20, 2003, Amato weighed 137.5 lbs. (Id.) Amato claims that she saw McNeil on two occasions following her suspicion in November that she was pregnant: on November 22, 2003, at a meeting in Orlando, and in mid-January, at a meeting in Boston. (Pl.'s Br. Amato Cert. ¶ 11; Def.'s Br. Wohlgemuth Cert. Ex. C.) Moreover, while Verint claims that the decision to terminate Amato occurred in late December or early January, Amato points out that the only evidence regarding the timing for this decision consists of an email dated January 30, 2003, four days before Amato was informed of the decision. Furthermore, Amato claims that the November Orlando meeting featured a social event where many people were consuming alcohol and at which Amato abstained from drinking. She claims that her abstention was obvious, and that the same evening McNeil inquired as to whether Amato planned on having children. (Pl.'s Br. Amato Cert. ¶ 11.)

Courts have held that a question as to whether a plaintiff is pregnant, standing alone, does not suffice to set forth a prima facie claim for pregnancy discrimination. See Kocak v. Cmty. Health Partners of Ohio, Inc., 400 F.3d 466, 471 (6th Cir. 2005). Moreover, Amato's weight gain cannot be said to be so drastic that her pregnancy would have been obvious to McNeil or other Verint employees. However, given the context of McNeil's comments to Amato, as well as the fact that she claims to have gained at least nine or ten pounds before the final time that McNeil saw her before terminating her, this Court finds that a reasonable jury could conclude

that Verint was aware of her pregnancy at the time of her termination.

Moreover, Amato has alleged sufficient facts to set forth a claim of gender discrimination notwithstanding her pregnancy. Amato alleges instances in which female employees were treated worse than males and claims that there was a sense of hostility toward female employees (Pl.'s Counter-statement of Material Facts ¶ 7.) Such assertions are sufficient to meet the final prong of the prima facie analysis. Therefore, this Court finds that Amato has set forth sufficient facts to meet her burden of production in setting forth a prima facie case of gender discrimination.

        2.        Verint's Legitimate, Nondiscriminatory Reasons for Amato's Termination

As Amato has satisfied the first prong of the McDonnell Douglas framework, this Court now reaches the second prong of the test. At this stage, the burden of production shifts to Verint to "introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). This burden has been characterized as "relatively light." Id. Moreover, "the employer need not prove that the tendered reason actually motivated its behavior[.]" Id.

Verint asserts that Amato was terminated for displaying a lack of aggressiveness in pursuing sales relationships and for inadequately developing a "pipeline" of future new business. Amato does not appear to challenge Verint's ability to meet their burden under this prong. This Court therefore finds that Verint has in fact met its burden of production in showing that it had a legitimate, nondiscriminatory reason for terminating Amato.

        3.        Amato's Burden of Showing Pretext

Having reached the final prong of the McDonnell Douglas framework, this Court must

now inquire as to whether Amato has demonstrated, by a preponderance of the evidence, that the reasons set forth by Verint are pretextual.  To meet this burden, Amato must introduce "sufficient evidence from which a jury could conclude that the purported reasons for defendant's adverse employment actions were in actuality a pretext for intentional . . . discrimination."  <u>Jones</u>, 198 F.3d at 412.  Phrased differently, Amato "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  <u>Fuentes</u>, 32 F.3d at 764.

When applying this test, a Court is faced with the conundrum of determining the extent to which a plaintiff must discredit a defendant's proffered reasons.  While this test is somewhat ambiguous, the Third Circuit has defined it as requiring that "the non-moving plaintiff . . . demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" (quoting <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 531 (3d Cir. 1992); <u>Josey v. John R. Hollingsworth Corp.</u>, 996 F.2d 632, 638 (3d Cir. 1993)).

Verint asserts that McNeil, who became the Eastern Regional Sales Director in October of 2002, determined that Amato was not aggressive in pursuing business and maintaining client relationships.  (Def.'s Br. at 9.)  Verint further argues that Amato's ability to create a "pipeline" of future business was weak.  (Def.'s Br. at 10.)  Finally, Verint claims that it has made other personnel decisions that do not discriminate against women; in January of 2003, McNeil hired a

woman to replace a male Account Executive, and in September of 2003 McNeil himself was discharged and replaced by a female (Def's. Br. at 12-13.)

Verint asserts that McNeil's determination of Amato's future potential stemmed from his observation that Amato displaying a lack of aggression in pursuing a list of targeted clients, as she did not make follow-up phone calls and appointments. (Def.'s Br. at 9.) Moreover, Verint claims that McNeil had analyzed the "pipeline" of future business submitted by Amato and determined that it was "unrealistic because she had not established the relationships required to create viable business opportunities." (Def.'s Br. at 10.)

To show pretext, Amato argues that for the 2002 fiscal year, she was the top sales person in her region and was the only sales person to meet her annual quota. (Pl.'s Br. Ex. G, H.) Verint counters that sales quotas were not the relevant criteria used by McNeil in determining who to terminate, and Amato "cannot establish pretext by pointing to some other criteria for measuring performance in which she succeeded but which was not the criteria upon which the discharge decision was made." (Def.'s Reply Br. at 5.) Verint is correct in this assertion, as "pretext turns on the qualifications and criteria identified by the employer, not the categories the plaintiff considers important." Simpson v. Kay Jewelers, 142 F.3d 639, 642 (3d Cir. 1998) (citing Ezold, 983 F.2d 509). Moreover, Amato cannot argue that McNeil's failure to use alternate criteria, such as meeting sales quotas, in determining whether to terminate her employment is necessarily evidence of discrimination. See Fuentes, 32 F.3d at 765 ("[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). While "a decision foolish, imprudent, or

9

incompetent by comparison to the employer's usual mode of operation can render it implausible, inconsistent, contradictory, or weak," id. at 765 n.8, Amato does not offer evidence that past termination decisions were made by relying on sales quotas; she offers only evidence that several employees were surprised by and did not understand or agree with McNeil's decision to terminate her employment.

Amato also fails in her attempt to show that Verint was inconsistent in determining its reasons for terminating her. Amato claims that at various times, Verint claimed that her termination was based on not effectively developing her pipeline, a lack of aggressiveness, and her failure to pursue a relationship with a particular client. (Pl.'s Br. at 15.) These reasons, while all phrased differently, ultimately encompass what Verint asserts was its reason for terminating Amato, namely its doubts as to her abilities to develop future business. That it was phrased at times as a "pipeline," at other times specified to one client, or characterized as a general lack of aggressiveness is not indicative of an inconsistent approach on the part of Verint.

Additionally, Amato claims that Verint's proffered reasons are factually inaccurate; Amato asserts that "the claim that she was not effective in developing new business is directly contradicted by the written record of her sales performance." (Pl.'s Br. at 21.) Amato submits no evidence to support this assertion; she states that "I believe based on my memory that my pipeline and forecasts were no worse than any other sales representative and were, in fact, better than the average sales representative." (Pl.'s Br. Amato Cert. ¶ 6.) She further claims that despite asking for this information in discovery, Verint did not provide it to her. (Id.)

However, Verint asserts that McNeil reached this conclusion, in part, based on his assessment of the fact that Amato's pipeline consisted primarily of "one significant sale in the

first quarter 2002." (Def.'s Br. Wohlgemuth Cert. Ex. G ¶ 17.) This, along with McNeil's admittedly subjective conclusion that Amato was not aggressive enough in pursuing new clients, is Verint's proffered reason for terminating Amato. While Amato can argue that this reason is foolish, or even miscalculated, "it is not enough for a plaintiff to show that the employer's decision was wrong or mistaken, because the issue is whether the employer acted with discriminatory animus." Abramson v. William Paterson College, 260 F.3d 265, 283 (3d Cir. 2001). Therefore, her reliance on one statistic (which she cannot produce to this Court) cannot be said to show, by a preponderance of the evidence, that Verint's proffered reason for terminating her employment was pretextual. This assertion by Amato, accepted as true for purposes of this motion, fails to meet her burden in disputing the reasons set forth by Verint and McNeil.

     Finally, this Court notes that Amato's argument regarding disparate treatment is also misguided. Amato claims that she was terminated despite the fact that male employees with lower sales figures than her remained employed. This application of the standard is incorrect; as is mentioned above, sales figures are not Verint's proffered reason for terminating Amato. Futhermore, the reasons that Verint has proffered, namely pipelines and future business development, were not applied in a discriminatory fashion, nor do they appear to be a pretext for discrimination; Verint proffers evidence, undisputed by Amato, to show that prior to terminating Amato, McNeil terminated two male account executives based on the same reasoning. (Def.'s Br. Wohlgemuth Cert. Ex. G ¶¶ 19-21.) This evidence stands to support Verint's proffered reasons for terminating Amato and undercuts Amato's suggestion that the standards selected by Verint were in some way being used as a pretext for exercising gender discrimination.

Accordingly, this Court finds that, taking the facts in a light most favorable to Amato, she cannot show by a preponderance of the evidence that the reasons proffered by Verint for her termination are merely a pretext for discrimination. Verint is therefore entitled to summary judgment.

### B.  Amato's Cross-Motion for Partial Summary Judgment

Amato's cross-motion asks this Court to grant her partial summary judgment on the issue of having established a prima facie case of discrimination under Title VII and the LAD. As this Court will grant Verint's motion for summary judgment, it will subsequently deny Amato's motion as moot.

### IV.  CONCLUSION

Based on the foregoing reasoning, this Court will grant Verint's motion for summary judgment and deny Amato's cross-motion for partial summary judgment as moot. The accompanying Order shall issue today.

Dated: February 16, 2007                  s/ Robert B. Kugler
                                                           ROBERT B. KUGLER
                                                           United States District Judge